Filed 8/21/20  P. v. Valle CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LUIS DANIEL VALLE,<br><br>    Defendant and Appellant. | H046670<br>(Santa Clara County<br>Super. Ct. No. C1765956) |

The single contention raised on appeal by defendant Luis Daniel Valle is that the trial court abused its discretion by requiring him to register as a sex offender pursuant to Penal Code section 290.006.[1]  He asserts that the registration order must be struck because there was no evidence to support the trial court's discretionary decision to require him to register as a sex offender on the ground that he committed the sole sex crime of which he was convicted as a result of sexual compulsion.  We agree.

The general purpose of the Sex Offender Registration Act, statutorily defined as section 290 to 290.024, inclusive (§ 290, subd. (a)), is " 'to promote the " 'state interest in controlling crime and preventing recidivism in sex offenders' " ' [citation]" (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 877 (*Johnson*)) and " 'to notify members of the public of the existence and location of sex offenders so they can take protective measures' [citation]."  (*Ibid.*)  Persons convicted of offenses specified in section 290,

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

subdivision (c), are statutorily subject to mandatory registration.[2] Persons who are convicted of other offenses may be required by a court to register pursuant to section 290.006.

Section 290.006, subdivision (a), provides: "Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of [s]ection 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration."

After carefully reviewing the record, we conclude that the trial court acted outside the scope of its discretion in ordering defendant to register as a sex offender pursuant to section 290.006. The court found that the sex offense of which defendant was convicted was not committed for purposes of sexual gratification. And there was insufficient evidence to support the court's conclusion that defendant committed the sex offense as the result of sexual compulsion. Accordingly, we modify the judgment by striking the registration requirement and affirm the judgment as modified.

I

*Procedural Facts and History*

A felony complaint was filed on June 14, 2017. On August 28, 2017, a first amended felony complaint was filed. It alleged that on or about June 11, 2017, defendant committed six felonies—specifically, violations of section 245, subdivision (a)(4) (assault by means of force likely to produce great bodily injury) (count 1); section 273.5, subdivision (a) (infliction of corporal injury upon someone with whom defendant has, or

---

[2] Under current law, sex offender registration is for life (§ 290, subd. (b)), although relief from the duty to register may be available in rare cases. (See § 290.5; see also § 4852.01 et seq.) Operative January 1, 2021, a tiered system will supersede the current registration system and provide for varying periods of registration, depending upon the crime. (See Stats. 2018, ch. 423, § 52; Stats. 2017, ch. 541, §§ 2.5, 4.)

previously had, an engagement or dating relationship) (count 2); section 422 (criminal threats) (count 3); section 136.1, subdivision (b)(1) (attempting to dissuade a victim or witness from reporting a crime) (count 4); sections 236 and 237 (felony false imprisonment) (count 5); and section 289, subdivision (a)(1) (forcible sexual penetration) (count 6). As to counts 1 and 2, it was further alleged that in the commission of each of the offenses, defendant personally inflicted great bodily injury upon the victim under circumstances involving domestic violence, within the meaning of sections 12022.7, subdivision (e), and 1203, subdivision (e)(3).

At a plea hearing, the trial court indicated that the parties had reached an agreed resolution of the case. As part of the plea agreement, count 6 of the first amended complaint would be amended to charge a violation of section 262, subdivision (a)(1) (spousal rape) accomplished by means of only duress. The agreement required defendant to plead no contest to all charges, including count 6 as amended, and admit the enhancement allegations without any sentencing limitations. Under the agreement, the sentencing judge would have the discretion to consider requiring lifetime sex offender registration pursuant to section 290.006. The court then granted the prosecutor's motion to amend count 6. As the parties had negotiated, defendant pleaded no contest to all charged offenses, as amended, and admitted the allegations associated with counts 1 and 2.

The probation report, dated June 8, 2018, summarized the offenses based on police reports and the victim's statements to police. According to the report, on June 11, 2017, in response to a report of domestic violence, the police were dispatched to Kaiser, where they contacted the victim. The victim had multiple injuries, including a "badly bruised left eye, which was swollen shut," a "swollen and profusely bleeding nose," "knots and welts around her forehead," and "bruised arms and back."

The probation report related that the victim had told police that "on the night of June 10, 2017, she ran from her apartment screaming after seeing the work truck

3

belonging to her boyfriend, the defendant, in her complex's parking lot." After hiding "around the block" for a while, the victim "returned to her apartment to gather her belongings to leave." Defendant entered her apartment and "began punching and kicking her." "She begged for him to stop." Defendant locked the victim in her bedroom with him and "refused her repeated requests to let her leave or . . . take her to the hospital." The victim "feared [that] defendant would kill her as he yelled several times, 'I'm going to kill you!' "

According to the probation report, the victim recounted to police that after approximately two hours, defendant took her to the hospital. Before taking her there, he "order[ed] her to change clothes and ma[de] her promise not to call the police." Defendant threatened to "kill her if she called the police."

The probation report indicated that an "emergency protective restraining order" had subsequently issued. While on civil standby to assist the victim at her residence, an officer had "observed blood on the bedroom and bathroom floors, a bloody sweatshirt in the bathroom, and signs of a struggle, including upturned and broken furniture."

The probation report stated that the police later interviewed the victim again. She reported that defendant's assault had caused "multiple breaks" to her nose and that she had undergone reconstructive surgery to her nose on June 19, 2017. The victim provided additional details of the incident, including that defendant had " 'smashed' her face into the floor [and] pressed his fingers into her nose, eyes, and mouth." He had also "choked her hard enough that she was 'seeing stars' and almost lost consciousness." "When [the victim] asked the defendant [whether] he was going to kill her, he told her, 'No, you stupid b****. I just broke your nose.' " Defendant also reportedly said, " 'If you ever cheat on me,' as he brandished a knife at her." The victim disclosed that "defendant also stuck his finger inside [her] vagina for a couple of seconds while interrogating her about her fidelity." The victim also told police that before dropping her off at the hospital,

4

defendant had "grabbed a metal pole from his equipment area and told her [that] he would kill her if she was lying about not having a phone on her person."

The probation report disclosed that defendant had previously committed domestic violence against the victim. The victim's roommate recalled that approximately six months prior to the incident, defendant had "kicked in the apartment door." The victim also told police that during her 10-month relationship with defendant, "there were approximately seven incidents of unreported domestic violence." She said that defendant had "chock[ed] her multiple times, chas[ed] her with a knife, and push[ed] her into sand." She said that "approximately one week prior to the assault, the defendant pulled her hair out and hit her head against the wall during an argument." The victim indicated that "[s]he was aware [that] the defendant had a prior abusive relationship." She also "believed [that] the defendant had been using cocaine more frequently."

The probation report contained the statement of defendant, who was a single, 33-year-old male. Defendant claimed that two weeks before the offenses, he had "ended his relationship with the victim." Defendant admitted the following facts concerning the incident. "On the day of the offense[s], the defendant, learned [that] the victim was at another man's home." Defendant " 'lost it' and 'snapped' when he confronted her." According to defendant, "he had been drinking heavily [and] using cocaine and Adderall." "[D]efendant asked her about the man she was [*sic*] with, [and] when she did not respond, the defendant hit her." " '[S]omehow,' [defendant] and the victim ended up in the bathroom. While in the bathroom, the defendant kicked the victim."

The probation report disclosed that defendant had a "minimal criminal history," which consisted of "[five] misdemeanor convictions." They "include[d] the following: Reckless Driving (2); Using Offensive Words in a Public Place; Driving without a License; and Selling Liquor without a License." Defendant had "no known felony convictions." Defendant's 2010 misdemeanor conviction for violating section 415, subdivision (3) ("us[ing] offensive words in a public place which are inherently likely to

5

provoke an immediate violent reaction") appears to have arisen from a prior domestic violence incident involving a former girlfriend.

The probation report provided the results of a Static–99R assessment of defendant's risk of sexual reoffense. The report stated in part: "[D]efendant was scored on the Static–99R, which is an actuarial measure of risk for sexual offense recidivism. This instrument has been shown to be a moderate predictor of sexual re-offense potential (in a 2016 recidivism study in California, it accurately predicted risk of re-offense about 77% of the time) . . . [D]efendant's score on the Static–99R was 5, which means his relative risk level is [a]bove average risk, which represents the risk of someone in this score group being charged with or convicted of another sexual offense within five years after he is released on probation. Based on the most recent 2015 norms, the estimated risk for this score on the Static–99R is 15.2 percent, over five years. His risk on release from a prison sentence cannot be calculated until his age at release on parole is known, so the risk score stated herein is predictive of risk based on his age on the date of this presentencing report."

The probation report described defendant's sexual conduct during the incident— his insertion of his finger into the victim's vagina—as "brief, albeit degrading." Nevertheless, the report recommended that defendant "be ordered to register pursuant to [s]ection 290 of the Penal Code." However, the report incorrectly stated that the crime of spousal rape to which defendant had pleaded (§ 262, subd. (a)(1)) had been committed by means of *force or fear*. The report failed to recognize that defendant had pleaded to a violation of section 262, subdivision (a)(1), by means of only duress.[3]

---

[3] The probation report does not show that defendant was married to the victim or had engaged in sexual intercourse with her. Assuming that defendant pleaded no contest to a crime that he did not commit, we also assume that he was willing to do so to achieve a certain outcome. The sex crime to which defendant agreed to plead—spousal rape by means of duress—did *not* trigger mandatory registration. (See § 290, subd. (c) [a person must register if convicted of a violation of "paragraph (1) of subdivision (a) of [s]ection 262 involving the use of force or violence for which the person is sentenced to

6

The victim's written impact statement described in horrific detail what had happened during the incident.  Among other things, she stated, "The sounds of blood gargling in my mouth as I begged him to stop, the vision of looking down at my blood soaked white t shirt [*sic*] suddenly realizing the extent of my injuries, the feeling of my head bouncing back and forth while he punched me, the loss of air while he strangled me, the feeling of his boot kicking me in the jaw . . . are all images that recycle in my head every day [I] wake up now.  The words 'let me see if you've been with any one [*sic*] else' and threats to mutilate my genitals while he sexually penetrated me played repeatedly in my mind for months."  The victim reported that she had sustained head and facial injuries, "including multiple breaks and fractures to my nose and teeth," which required "major reconstructive surgery."  She described defendant as becoming "a monster almost overnight" months into their relationship and, during the present offenses, charging her "like a rabid dog."  The victim said that she believed that she "wasn't going to make it out of this alive."

In her impact statement, the victim also reported that defendant had committed multiple, prior uncharged acts of violence against her.  The victim recounted that approximately two weeks before the incident, defendant had "held a knife to [her] throat and threatened to end [her] life."  She said that he had thrown her "out of an SUV by [her] hair onto the concrete in muddy water over and over" and that "every time [she had] attempted to get up[,] he [had] continued to pull [her] by [her] hair and bash [her] head

---

the state prison"].)  In contrast, a person convicted of a violation of section 289, subdivision (a)(1)(A) (forcible sexual penetration)—the crime originally charged in count 6—is subject to mandatory registration.  (See § 290, subd. (c).)  We do not here address the propriety of the court accepting defendant's plea to count 6, as amended, which defendant has not challenged.  (See generally *People v. Palmer* (2013) 58 Cal.4th 110, 112-114 [court's duty to inquire as to the factual basis of a defendant's conditional plea of guilty or no contest].)  In this case, counsel for both parties stipulated that there was a factual basis for defendant's plea to spousal rape by means of duress (§ 262, subd. (a)(1)) for the purposes of their agreed case resolution.

into the ground." The victim indicated that as she had "attempted to leave the relationship," defendant had "threatened to mutilate[her] genitals with a baseball bat covered in nails and to cut [her] tongue off if [she] was . . . ever . . . with another man again." The victim stated that defendant had threatened to kill her and her brother, who then lived with them, if she sought help.

The victim further indicated in her impact statement that defendant had moved out of her home but had returned three days before the incident underlying the present convictions. According to the victim, on that occasion, defendant had broken in, accused her of infidelity, and cornered her in the bathroom. She stated that defendant had strangled her "numerous times," choking her until she blacked out, and that he had screamed at her and pulled her hair. She said that he had bashed her "face into the wall so hard that both of [her] ears turned black and blue, handfuls of [her] hair came out and the right side of [her] face was completely bruised." The victim indicated that she had wedged her upper body behind the toilet and that defendant had "left in an angry rage and told [her that] the relationship was finished."

A supplemental probation memo, dated November 16, 2018, was filed. The memo corrected an error in the probation report as to count 6, stating that the offense had been committed by means of duress, not force or fear. The memo clarified that sex offender registration for such offense was discretionary under section 290.006. However, the memo stated, "Upon review of the facts of the present matter, it appears the defendant's actions were as a result of [*sic*] power and/or control, *not compulsion or gratification*." (Italics added.) The updated recommendation of the probation officer was that "defendant not be ordered to register pursuant to Penal Code [s]ection 290."

A sentencing hearing was held on November 16, 2018. The trial court sentenced defendant to a total term of six years, consisting of a middle term of three years for the assault (§ 245, subd. (a)(4)) and a lower term of three years for the spousal rape (§ 262,

8

subd. (a)(1)).**4**  The court stayed punishment on the conviction of violating section 273.5, subdivision (a), pursuant to section 654.  It imposed concurrent, two-year terms on each of the three remaining convictions.  The court struck the two enhancements (§ 12022.7, subd. (e)) pursuant to section 1385.

Following imposition of sentence, the parties presented their arguments regarding whether the court should order defendant to register as a sex offender.  The prosecutor asked the trial court to make a registration order, arguing:  "[Defendant] made the decision to insert his finger into her vagina, terrorizing her.  And he made that choice willingly, without provocation.  And the People believe that by doing that, by continuing to abuse her in a sexual way, that is different from the physical abuse.  [¶]  The defendant derived pleasure from that and there is evidence to suggest to the [c]ourt that there is sexual gratification."

Defense counsel contended that the offenses were part of a violent assault on the victim and that there was "nothing sexual about it" and "never sexual gratification." He pointed to the victim's statements to police.  Defense counsel also argued that the Static–99R risk assessment test conducted by the probation department showed that defendant posed an "extremely low" risk and did not "have propensities of that nature." He maintained that there was no evidence that any offense was committed as a result of sexual compulsion or for purposes of sexual gratification.

The prosecutor pointed out that the Static–99R indicated an above-average risk of sexual reoffense.  She also reminded the court that defendant's conduct gave rise to a charge of violating section 289 (forcible sexual penetration) and such a violation is subject to mandatory registration.

The trial court ordered defendant to register as a sexual offender.  The court explained its reasons:  "There was [*sic*] threats of genital mutilation.  There was the

_____

**4** The court continued to recognize that the act underlying the count 6 conviction involved defendant's "insertion of the finger into the victim's vagina."

9

accusation of infidelity, the threat to kill [her] if she was with another man, and then sticking the finger in the victim's vagina to see if she had been with another man. [¶] All of this it seems . . . exudes sexuality. Perhaps in a perverse way, but still, it just . . . exudes sexuality. [¶] I am not saying that your client derived any gratification out of this, but it seems to me that sexual compulsion, sexual compulsion was a driver of this offense. And in the defendant's [*sic*] own words, became a monster."

## II

### *Discussion*

#### A. *Governing Law*

"If the conviction is for an offense other than those automatically requiring registration [by statute], the court may nonetheless exercise its discretion to impose a registration requirement if the court finds the offense was sexually motivated or compelled, and that registration is justified by the defendant's risk of reoffense. [Citations.]" (*People v. Mosley* (2015) 60 Cal.4th 1044, 1048.) To exercise its discretion to impose sex offender registration under section 290.006 (former section 290, subd. (a)(2)(E)), "the trial court must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197, overruled on another ground in *Johnson*, *supra*, 60 Cal.4th at pp. 875, 888.) "By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*Hofsheier*, *supra*, at p. 1197.)

We review an order requiring discretionary sex offender registration for abuse of discretion. The abuse-of-discretion standard of review is deferential, but "it is not

10

empty." (*People v. Williams* (1998) 17 Cal.4th 148, 162 (*Williams*).) "[I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]." (*Ibid.*)

B. *Analysis*

Defendant contends that "[s]exual compulsion is a psychiatric diagnosis for compulsive sexual behavior or sexual addiction" and that sexual compulsion "bears no relationship to the conduct [that] the court described involving threats of genital mutilation and becoming 'a monster.' " Defendant suggests that he "could have been ordered to register as a domestic violence offender if the law required such registration" but that "there was no basis to order lifetime sexual offender registration."

Defendant asserts that in view of "the court's analysis, it is clear [that] the court did not understand the meaning of 'sexual compulsion.' " He quotes the dictionary meaning of the word "compulsion." He also quotes the descriptions of compulsive sexual behavior on the Mayo Clinic's Web site and in an article in the Journal of Behavioral Addiction. Without any citation, defendant tells us that "[a]ccording to a CNN report, the ICD [the International Classification of Diseases of the World Health Organization] defines compulsive sexual behavior disorder as a 'persistent pattern of failure to control intense, repetitive sexual impulses or urges resulting in repetitive sexual behavior.' "

The People point out that "[t]he purpose[s] of sex offender registration is to deter sex offenders from reoffending and to ensure such offenders shall be readily available for police surveillance." Although they acknowledge that defendant was convicted of only one sex offense, they argue that a "reasonable court could conclude that when [defendant] digitally penetrated [the victim] as he beat her and accused her of infidelity, he was acting on a sexual urge that he had difficulty controlling." They claim that this conclusion is "buttressed" by the victim's assertion in her impact statement that before this incident defendant had "threaten[ed] to mutilate [her] genitals with a baseball bat covered in nails

11

if she engaged in a relationship with another man." The People maintain that "[v]iewed in the light most favorable to the trial court's decision, and not in the light most favorable to [defendant], the evidence reasonably supports the trial courts express determination that appellant digitally penetrated [the victim] as a result of sexual compulsion."

In response, defendant asserts that "no matter how likely it is [that he] will commit violent acts in the future, *sexual* offender registration cannot be ordered absent evidence his violent conduct was committed for sexual gratification or due to sexual compulsion." He maintains that the mere "likelihood [that] a defendant will [sexually] reoffend does not suffice to order lifetime sexual offender registration."

The statutory predecessor of section 290.006 was former section 290, subdivision (a)(2)(E), which was added in 1994. (Stats. 1994, ch. 867, § 2.7; see *People v. Picklesimer* (2010) 48 Cal.4th 330, 342.) "As originally introduced, the [proposed] 1994 amendments [of former section 290] gave a court much broader discretion under . . . subdivision (a)(2)(E). (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3513 (1993-1994 Reg. Sess.) as amended June 2, 1994, p. 4.) Thereafter, the proposed legislation was amended to '[c]larify that a court may order any person to register as a sex offender for any offense not referenced in the sex offender statute if the court finds at the time of conviction that the person committed the offense as a result of sexual compulsion or for the purpose of sexual gratification' and to '[r]equire a court who implements the above provision to . . . state on the record the reasons for its findings and the reasons for requiring registration.' (Assem. Conc. Sen. Amends., Assem. Bill No. 3513 (1993-1994 Reg. Sess.) as amended Aug. 26, 1994, p. 2.) This more restrictive version of the legislation was enacted. (Stats. 1994, ch. 865, § 1, p. 4317.)" (*In re Derrick B.* (2006) 39 Cal.4th 535, 545; see Stats. 1994, ch. 867, §§ 2.7, 4.5, subd. (g) [double-joining provision], pp. 4389-4390, 4401.) As previously drafted, the bill had "provide[d] no limits whatsoever on the court's authority to require an offender

to register as a sex offender."  (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3513 (1993-1994 Reg. Sess.) as amended June 2, 1994, p. 4.)

Neither party has established that the DSM-5 (Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013)) identifies compulsive sexual behavior as a separate disorder, or as a subcategory of another mental health disorder, and establishes diagnostic criteria.  The prosecutor did not present any evidence to the trial court that defendant's sexual conduct underlying his sex offense conviction was the result of any mental health disorder or condition involving sexual compulsion.  Rather, the prosecutor argued that the evidence supported a finding that defendant inserted his finger into the victim's vagina for purposes of sexual gratification.  The trial court was not persuaded by that argument.

In any event, neither party has provided any legislative history to suggest that the phrase "sexual compulsion" was intended to correspond to an established psychiatric diagnosis, disorder, or condition.  Our research has not disclosed any such legislative intent.  Consequently, we focus on the ordinary meaning of the words making up the phrase "sexual compulsion."

The word "sexual" in this context is defined as "[r]elating to, tending towards, or involving sexual intercourse, or other forms of intimate physical contact."  (Online Oxford English Dict. <https://www.oed.com/view/Entry/177084?redirectedFrom=sexual#eid> [as of Aug. 18, 2020], archived at <https://perma.cc/D6VF-AT4E>.)  The word is also defined as relating to "the instincts, physiological processes, and activities connected with physical attraction or intimate physical contact between individuals."  (Lexico Online Dict. <https://www.lexico.com/en/definition/sexual> [as of Aug. 18, 2020, archived at <https://perma.cc/Z3EC-KRYT>.)  Another definition of "sexual" is "of or relating to the sphere of behavior associated with libidinal gratification."  (Merriam-Webster Unabridged Online Dict. <https://unabridged.merriam-webster.com/unabridged/sexual> [as of Aug. 18, 2020], archived at < https://perma.cc/Y6FG-RUPZ>.)

13

One definition of the word "compulsion" is "[a]n insistent impulse to behave in a certain way, contrary to one's conscious intentions or standards." (Online Oxford English Dict. <https://www.oed.com/view/Entry/37937?redirectedFrom= compulsion#eid> [as of Aug. 18, 2020], archived at <https://perma.cc/2L9Z-87VG>.) Another dictionary defines "compulsion" as "[a]n irresistible urge to behave in a certain way, especially against one's conscious wishes." (Lexico Online Dict. <https://www.lexico.com/en/definition/compulsion> [as of Aug. 18, 2020], archived at <https://perma.cc/4NRK-CQHC>.) The word is also defined as "an irresistible impulse to perform an irrational act the performance of which tends to disturb a neurotic doer but not a psychotic." (Merriam-Webster Unabridged Online Dict. <https://unabridged.merriam-webster.com/unabridged/compulsion> [as of Aug. 18, 2020], archived at <https://perma.cc/WK73-Q2TN>.)

In the phrase "sexual compulsion," the word "sexual" is an adjective used to modify the noun "compulsion" and differentiates this type of compulsion from other forms of compulsion—for example, a compulsion to gamble, steal, or lie. Considering the ordinary meanings of the words "sexual" and "compulsion" together, we conclude that there was no evidence from which to reasonably infer that defendant acted from an irresistible or insistent impulse or urge to engage in sexual behavior. The probation report indicated that defendant had no prior conviction for a registrable sex offense or, indeed, any sexual offense. The parties do not suggest that defendant had previously committed any uncharged sexual offense, and there was no evidence of that kind of history. The probation officer described the penetration as a "degrading" act and concluded that defendant's actions were the result of his need for power and control over the victim, not sexual compulsion or a desire for sexual gratification.

The evidence indicated that defendant was in an abusive relationship with the victim and that he had committed domestic violence against her on multiple occasions. The reasonable inference was that defendant had become infuriated with the victim upon

14

learning that she had been at another man's home. There was no evidence that defendant "lost it" or "snapped" because of overwhelming or irresistible sexual urges. Rather, the evidence indicated only uncontrolled rage. He was punching, kicking, and strangling the victim and smashing her face into the floor. She was "gargling" blood and her shirt was "blood soaked." He broke her nose so badly that she required reconstructive surgery. He brandished a knife, implicitly threatening violence if she ever cheated on him. As indicated, based on this incident, defendant pleaded no contest to assault by means of force likely to produce great bodily injury (count 1); infliction of corporal injury upon someone with whom he had, or had had, an engagement or dating relationship (count 2); making criminal threats (count 3); attempting to dissuade a victim from reporting a crime (count 4); and felony false imprisonment (count 5), in addition to pleading no contest to a sex offense (count 6). Defendant admitted that in the commission of counts 1 and 2, he personally inflicted great bodily injury upon the victim under circumstances involving domestic violence, within the meaning of sections 12022.7, subdivision (e), and 1203, subdivision (e)(3).

According to the victim's statement to police, as related by the probation report, defendant inserted his finger inside her vagina "for a couple of seconds while interrogating her about her fidelity." Her later statement to the court suggests that he said, "[L]et me see if you've been with any one [*sic*] else," and again threatened genital mutilation. It is apparent that defendant sought to exert control over the victim and her relationships with other men through violence and threats of violence. But nothing in the evidence suggests that the digital penetration, which was a momentary part of an extended episode of violence, was the result of *sexual* compulsion.

While there was ample evidence of defendant's explosive temper, there was no evidence that he suffered from an inability to control intense sexual urges upon which he acted, was sexually aroused at any time during the entire incident, or experienced an insistent *sexual* urge to stick his finger in the victim's vagina that drove him to do so.

15

Likewise, there was no evidence that defendant's prior threat to mutilate the victim's genitals and cut off her tongue if she were ever with another man, which he reportedly made when the victim was trying to leave the relationship, was the result of *sexual* urges, rather than a part of the greater pattern of domestic violence, intimidation, control, and abuse described by the victim.[5]

In our view, the trial court's finding that the penetration offense was a result of sexual compulsion " 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]." (*Williams*, *supra*, 17 Cal.4th at p. 162.)  The question here is not whether an offender's feelings of anger or jealousy toward a current or former intimate partner triggered reprehensible violence, whether that violence involved a forcible sex act, or whether sex offender registration would potentially deter future sex crimes.  The only question is whether defendant's digital penetration of the victim's vagina was "a result of sexual compulsion." (§ 290.006.)  Viciousness does not equate to sexual compulsion.  We see no evidence to support a reasonable conclusion that

---

[5] "In enacting Evidence Code section 1109, which allows the introduction of propensity evidence in a prosecution for domestic violence, the legislative history points to the Legislature's concern with domestic violence that could escalate to the point that the defendant kills the victim." (*People v. Quintanilla* (2020) 45 Cal.App.5th 1039, 1058.)  In the context of the proposed legislation to add that section, a legislative committee report stated:  "The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases.  Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity.  Without the propensity inference, the escalating nature of domestic violence is likewise masked.  If we fail to address the very essence of domestic violence, we will continue to see cases where perpetrators of this violence will beat their intimate partners, even kill them, and go on to beat or kill the next intimate partner.  Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all." (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1876 (1995-1996 Reg. Sess.) June 25, 1996, pp. 3-4.)

defendant's brief act of penetration was driven by an *irresistible sexual* impulse or urge amounting to sexual compulsion.

We respectfully disagree with Justice Bamattre-Manoukian's view that the trial court did not abuse its discretion by finding that defendant committed the underlying sex offense as a result of sexual compulsion. The Legislature purposely placed limits on the discretion of trial courts to require a defendant to register as a sex offender where the defendant was not subject to mandatory sex offender registration for a crime. Under the circumstances, we conclude that the evidence was insufficient to support a finding that defendant committed the sexual offense as a result of sexual compulsion and that the trial court acted beyond the legal bounds of its discretion by requiring defendant to register as a sex offender on that ground. Accordingly, the judgment must be modified to strike the registration requirement.

## DISPOSITION

The judgment is modified by striking the requirement to register as a sex offender. As modified the judgment is affirmed.

17

_____

ELIA, J.

I CONCUR:



_____

PREMO, Acting P.J.

*People v. Valle*
H046670

BAMATTRE-MANOUKIAN, J., Concurring and dissenting.

I agree with the majority's determination that in order to impose sex-offender registration pursuant to Penal Code section 290.006, subdivision (a) (section 290.006), the trial court must find that the defendant committed the offense as a result of sexual compulsion or for purposes of sexual gratification, and that sexual compulsion means "an irresistible or insistent impulse or urge to engage in sexual behavior." (Maj. opn., *ante*, p. 14.) However, based on the deferential standard of review and the evidence in the record, I conclude that the trial court's decision to impose sex offender registration pursuant to section 290.006 was not an abuse of discretion.

The trial court's finding that defendant committed the offense as a result of sexual compulsion was not " 'outside the bounds of reason' " given the evidence in the record. (*People v. Bryant, Smith & Wheeler* (2014) 60 Cal.4th 335, 390.) During defendant's violent attack on the victim, he digitally penetrated her vagina while threatening to mutilate her genitals and stating, " '[L]et me see if you've been with any one [*sic*] else.' " In addition, when the victim tried to leave the relationship sometime before this offense, defendant "threatened to mutilate [the victim's] genitals with a baseball bat covered in nails and to cut [her] tongue off if [she] was . . . ever . . . with another man again." When speaking to the probation officer regarding the current offense, defendant stated that he " 'lost it' " and " 'snapped' " when he confronted the victim after learning she had been at another man's home. The victim described defendant as "a monster" and stated that he had "charged toward [her] like a rabid dog."

Viewing the record in the light most favorable to the trial court's ruling, the evidence of defendant's conduct provides a reasonable basis to conclude that when defendant becomes angry or jealous in a romantic relationship, he is not only physically violent, but sexually violent as well. This is especially true given that defendant, when jealous, had previously threatened to inflict sexual violence on the victim. Further, defendant's statement that he " 'lost it' " and " 'snapped' " when he confronted the victim

1

provides additional support for the trial court's finding that defendant committed the sex offense as a result of sexual compulsion, in that defendant felt "an irresistible or insistent impulse or urge to engage in sexual behavior." (Maj. opn., *ante*, p. 14.)

For these reasons, I conclude that the trial court's decision to impose sex-offender registration was not an abuse of discretion because it was not "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

I CONCUR AND DISSENT:

_____
BAMATTRE-MANOUKIAN, J.

*People v. Valle*
**H046670**

3